*In re* PETRIE'S ESTATE.

DARTT *v.* PETRIE.

1. WILLS—MENTAL COMPETENCY—DIRECTED VERDICT.
   In will contest case, evidence of testatrix's mental incompetency, *held*, insufficient to present jury question.

2. SAME—UNDUE INFLUENCE MUST AMOUNT TO COERCION.
   Undue influence, to vitiate will, must amount to force and coercion, destroying testatrix's free agency, and there must be proof that will was obtained by this coercion, and it must be shown that circumstances of its execution are inconsistent with any hypothesis but undue influence.

3. SAME—DIRECTED VERDICT.
   In will contest case, evidence of undue influence, *held*, insufficient to present jury question.

4. SAME—FRAUD—DIRECTED VERDICT.
   In will contest case, charge of fraud, *held*, not supported by any evidence.

As to effect of meretricious relation between testator and beneficiary on validity of devise or bequest, see annotation in 17 L. R. A. (N. S.) 477.

Fraud as distinguished from undue influence as grounds for contesting will, see annotation in 28 A. L. R. 787.

Error to Kent; Brown (William B.), J. Submitted June 10, 1930. (Docket No. 76, Calendar No. 34,933.) Decided October 3, 1930.

Albert Petrie presented for probate the last will and testament of his late wife, Cordelia Randolph Petrie, deceased. William A. Dartt and another filed a notice of contest. From an order disallowing the will, proponent appealed to the circuit court. From a directed verdict and judgment for proponent, contestants bring error. Affirmed.

*Linsey, Shivel & Phelps,* for proponent.

*Dean S. Face,* for contestants.

McDONALD, J. This is a will contest. Albert Petrie, the proponent, was the husband of testatrix. William A. Dartt was a nephew, and the other contestant, Mary Treat, was named as a beneficiary in a former will. The grounds of contest were mental incompetency, fraud, and undue influence. On this issue the case was submitted to the jury. They were unable to agree. The court called them in and directed a verdict sustaining the will. A motion for a new trial was denied, and judgment was ordered entered on the verdict. The contestants have brought error.

*Mental competency:* The testatrix was 70 years of age at the time she made the will in question. She was a widow with no children. Albert Petrie had been a member of her family for many years, and to him she left the major portion of her estate, which inventoried about $45,000. The will was executed May 31, 1927. She married Petrie a month later. They lived together until her death, March 25, 1928. On the day she made the will, she telephoned to

Judge Dunham of the Kent circuit court. He had been her attorney and had known her quite well for many years. In her telephone conversation she requested that he come to her home. He did so. She told him she wanted to make a will and how she wanted to dispose of her property. He discussed the matter with her, but declined to draft the will on the ground that such business belonged to the attorneys. As to her mental competency, he testified:

"I observed her mental condition on that occasion. I had known her for years, and I had talked with her about many things; I know she mentioned many matters that we had that I did not recall until she spoke of them. In my judgment, her mental condition was just as good as it ever was; in other words, it is my judgment she was perfectly competent to do any kind of business, as she always had been."

In addition to this testimony, four Grand Rapids doctors, prominent in their profession, one of whom was the family physician, testified that she was mentally competent at the time she executed the will. There was also a large number of lay witnesses who expressed similar opinions. The testimony offered by the contestants was not directed to her condition at or near the time of the execution of the will. At most it showed a temporary incapacity due to sickness, which, according to undisputed testimony, did not exist when the will was made. As to her mental capacity to make the will, the evidence did not present a jury question and the trial court did not err in so holding.

*Undue influence and fraud.*

"The influence, to vitiate the will, must have been such as to amount to force and coercion, destroying her free agency, and there must be proof that the will was obtained by this coercion, and it must be shown that the circumstances of its execution are

inconsistent with any hypothesis but undue influence.'' *Maynard* v. *Vinton,* 59 Mich. 139 (60 Am. Rep. 276).

It is true, as courts have frequently said, that undue influence is usually exercised secretly, but, to establish it, there must be some evidence that its effect remained with the testatrix at the very time she made the will and operated on her mind with sufficient force to deprive her of her free agency and subordinate her will to that of some other. In this case to that of Mr. Petrie. On this question the testimony of Judge Dunham is decisive. For ten years Petrie had made his home with testatrix and her husband, Eugene Randolph. She spoke of this to Judge Dunham and explained why she desired to leave her property to Mr. Petrie. Judge Dunham testified:

''And she said 'he has lived with us as one of the family;' two or three times she said, 'Gene often spoke to me; he is just like a son of ours,' and she said, 'Gene wanted, when I was through with the property, wanted him to have it, or if I die first, he was going to will it to this young man,' that they talked it over between her and him, and she promised him if he died first she would will it to him, and she said, he had said the same thing to her, if she died first, he would do it.''

This conversation was had a few hours before the will was executed. Petrie was not present. The provisions of the will were in accordance with her wishes as expressed to Judge Dunham. It was drawn by Monroe Dunham at her request. So far as appears by the record, Mr. Petrie had no part in selecting either the judge or his son. The testatrix was competent to make a will and to transact other business concerning her property. She was not a weakling. She had no children or other near relatives. It was natural that she should leave her

property to Petrie, who had been a member of her family for ten years. Notwithstanding the disparity in their ages, she married him within a month of making the will, and the evidence shows that he was a kind and attentive husband and that she loved him. In view of the circumstances attending the making of the will, as related by Judge Dunham, showing the absence of any restraint or coercion or of influence, due or undue, the various incidents before and after the execution of the will which are urged by the contestants as showing undue influence are not important and need not be discussed. The trial court correctly held that there was no question of undue influence for the jury.

The contestants claim fraud independent of undue influence. We find no evidence which in any way tends to support this claim.

The jurisdiction of the court to direct their verdict after the jury had announced their inability to agree requires no discussion. The court correctly disposed of all issues. Therefore the judgment is affirmed, with costs to the proponent.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.